## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CHARACTER TECHNOLOGIES, INC.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**APPLIED DIGITAL CORPORATION,**<br><br>    **Defendant.** | **Court No. 1:25-cv-00739-JCG** |
| **APPLIED DIGITAL CORPORATION,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**CHARACTER TECHNOLOGIES, INC.,**<br><br>    **Defendant.** | **Court No. 1:25-cv-00909-JCG** |

## <u>OPINION AND ORDER</u>

[Granting in part and denying in part Applied Digital's Partial Motion to Dismiss and granting in part and denying in part Character Tech.'s Motion to Dismiss or Consolidate.]

Dated:  July 23, 2026

<u>Catherine A. Gaul</u>, Ashby & Geddes, P.A., of Wilmington, DE; <u>Justin Ehrlich</u>,

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                   Page 2

Christian P. Erwin, and Samantha Rifkin, Miller Barondess, LLP, of Los Angeles, CA.  Attorneys for Plaintiff/Defendant Character Technologies, Inc.

Kelly E. Farnan, Richards, Layton & Finger, PA, of Wilmington, DE; Gavin J Rooney and Julie A. Minicozzi, Lowenstein Sandler LLP, of New York, N.Y. Attorneys for Defendant/Plaintiff Applied Digital Corporation.

Choe-Groves, Judge:  Before the Court are motions to dismiss in related cases Character Tech., Inc. v. Applied Digital Corp. ("Character Tech."), Court No. 25-00739 and Applied Digital Corp. v. Character Tech., Inc. ("Applied Digital"), Court No. 25-00909.

Character Technologies, Inc. ("Character Tech.") filed its Complaint in Court No. 25-00739 on June 13, 2025, alleging the following four counts: (1) Count I, Declaratory Judgment of No Breach of Contract; (2) Count II, Breach of the Implied Duty of Good Faith and Fair Dealing; (3) Count III, Promissory Estoppel; and (4) Count IV, Fraud.  Compl., Court No. 25-00739 ("Character Tech. Compl.") (D.I. 1).  Applied Digital Corporation ("Applied Digital") filed Defendant's Partial Motion to Dismiss ("Applied Digital's Partial Motion to Dismiss") seeking dismissal of Counts III and IV of Character Tech.'s Complaint. See Defendant's Part. Mot. Dismiss ("Applied Digital Part. Mot. Dismiss") (D.I. 9); Opening Br. Supp. Def. Applied Digital Corp.'s Part. Mot. Dismiss ("Applied Digital Opening Br.") (D.I. 10).

Applied Digital filed its Complaint in Court No. 25-00909 on July 18, 2025, alleging the following three counts: (1) Count I, Breach of Contract; (2) Count II,

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                            Page 3

Anticipatory Repudiation; and (3) Count III, Breach of the Covenant of Good Faith and Fair Dealing.  Compl., Court No. 25-00909 ("Applied Digital Compl.") (D.I. 1).  Character Tech. filed Defendant's Motion to Dismiss, or in the Alternative, for Consolidation ("Character Tech.'s Motion to Dismiss or Consolidate") seeking dismissal of Applied Digital's Complaint under Federal Rules of Civil Procedure 12(b)(6) and 13(a) or, in the alternative, consolidation of the two actions under Federal Rule of Civil Procedure 42(a).  Def.'s Mot. Dismiss Alt. Consol. ("Character Tech. Mot. Dismiss Alt. Consol.") (D.I. 11); Def.'s Opening Br. Supp. Mot. Dismiss Alt. Consol. ("Character Tech. Opening Br.") (D.I. 12).

For the reasons that follow, the Court denies in part and grants in part both Applied Digital's Partial Motion to Dismiss and Character Tech.'s Motion to Dismiss or Consolidate, and the Court consolidates Character Tech., Court No. 25-00739 into Applied Digital, Court No. 25-00909.  Applied Digital, Court No. 25-00909 shall be designated as the lead case and Applied Digital shall be designated as the Plaintiff, with Character Tech. designated as the Defendant.  This case shall proceed under Consol. Court No. 25-00909 and Character Tech.'s claims in Character Tech., Consol. Court No. 25-00739 shall be deemed filed as counterclaims and defenses in Applied Digital, Consol. Court No 25-00909 (except for Count I of Character Tech.'s Complaint, which the Court dismisses for the reasons explained below).

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                    Page 4

## BACKGROUND

Character Tech. is a Delaware corporation with its principal place of business in Menlo Park, California.  Character Tech. Compl. at ¶ 3; Applied Digital Compl. at ¶ 3.  Applied Digital is a Nevada corporation with its principal place of business in Dallas, Texas.  Character Tech. Compl. at ¶ 4; Applied Digital Compl. at ¶ 4.  Character Tech. was founded in 2021 and developed an artificial intelligence ("AI") platform on which users can create and engage with personalized "Characters" for educational or entertainment purposes.  Character Tech. Compl. at ¶ 9; Applied Digital Compl. at ¶ 8.  Applied Digital is a technology company that develops digital infrastructure and sells access to general processing units ("GPUs") where, through a series of data centers, Applied Digital offers AI-development solutions designed to meet the needs of high-performance computing applications.  Character Tech. Compl. at ¶ 10; Applied Digital Compl. at ¶ 7.

The Parties' Complaints allege that on June 28, 2023, Character Tech. and Applied Digital entered into the Service Level Agreement (SLA) Supportive to Customer Terms of Service Contract (the "Agreement"), in which Character Tech. agreed to pay Applied Digital an hourly fee assessed on a 24-hour per-day, 7-day per-week basis for access to a defined number of GPUs.  Character Tech. Compl. at ¶ 11; Character Tech. Compl., Ex. A (D.I. 1-1); Applied Digital Compl. at

Court Nos. 1:25-cv-00739, 1:25-cv-00909                              Page 5

¶¶ 10–12; Applied Digital Compl., Ex. A (D.I. 1-1).  Applied Digital alleges that the Agreement required Applied Digital to make available 1,024 GPUs by June 2023 ("the Phase I Tranche"), and a second group of 1,024 GPUs by August 2023 ("the Phase II Tranche").  Applied Digital Compl. at ¶ 11.  Character Tech. alleges that it provided Applied Digital with a prepayment of $22,491,979.78 toward the total value of the Agreement, to be drawn down until it ran out, at which point Character Tech. would pay any remaining amounts on a per-month basis. Character Tech. Compl. at ¶ 11.  Applied Digital alleges that Character Tech. agreed to pay usage fees of $1.99 per GPU per hour, with a total contract value for Phase I Tranche of $35,701,555.20.  Applied Digital Compl. at ¶ 13.  Thereafter, Applied Digital sent quarterly invoices to Character Tech. detailing the charges accrued and corresponding reduction in Character Tech.'s prepayment amount. Character Tech. Compl. at ¶ 11; Applied Digital Compl. at ¶ 15.  The Parties contend that after Character Tech. issued the prepayment of $22,491,979.78 against the Phase I Tranche of 1,024 GPUs, Applied Digital proceeded to make 1,024 GPUs in the Phase II Tranche available to Character Tech. and received a further payment of $8,073,216.00 for the Phase II Tranche GPUs.  Character Tech. Compl. at ¶ 12; Applied Digital Compl. at ¶¶ 14, 16.

Applied Digital avers that the Agreement provided that once the prepayments were exhausted, Character Tech. would be responsible for the hourly

usage fees for the Phase I Tranche and the Phase II Tranche GPUs until the end of the Agreement's term.  Applied Digital Compl. at ¶ 17.  Applied Digital contends that during negotiations of the Phase II Tranche pricing addendum, Character Tech. confirmed that after the prepayment was exhausted, Character Tech. would pay in full for the remaining months.  Id.

On or around April 29, 2024, Character Tech. and Applied Digital entered into a second addendum to the Agreement ("the Second Addendum"), which updated the pricing and payment terms of the Phase II Tranche.  Character Tech. Compl. at ¶ 13; Applied Digital Compl. at ¶ 18; see Character Tech. Compl., Ex. B.  Applied Digital alleges that the Second Addendum provided a price of $2.25 per GPU, per hour, assessed on a 24-hour per-day, 7-day per-week basis for the 1,024 GPUs over the remaining 16 months of the Agreement, with a total Phase II Tranche value of $26,910,720.00.  Applied Digital Compl. at ¶ 18; see Applied Digital Compl., Ex. B.  Applied Digital asserts that pursuant to the Second Addendum, Character Tech. would continue to lease both the Phase I Tranche and the Phase II Tranche GPUs from March 2024 to August 2025.  Applied Digital Compl. at ¶ 19.  The Second Addendum provides that any dispute related to the Agreement or addenda would be "governed and construed in accordance with the laws of the State of Delaware[.]"  Character Tech. Compl., Ex. B at 2; Applied Digital Compl., Ex. B at 2.

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                    Page 7

On or around June 3, 2024, Applied Digital reached out to Character Tech. about returning access to the clusters and ending the Agreement early. Character Tech. Compl. at ¶ 14; Applied Digital Compl. at ¶ 23. Applied Digital avers that if Applied Digital was able to re-lease the clusters to another customer, Applied Digital would release Character Tech. from its payment obligations for those re-leased GPUs otherwise due under the Agreement. Applied Digital Compl. at ¶ 23. Character Tech. alleges that the first time it learned of the precondition of finding new customers to assume the GPUs assigned to Character Tech. was through a letter sent on March 12, 2025. Character Tech. Compl. at ¶ 34. On July 29, 2024, Character Tech. sent a third addendum ("Third Addendum") allegedly memorializing the terms for ending the Agreement early. Character Tech. Compl. at ¶ 24; Applied Digital Compl. at ¶ 28; Character Tech. Compl., Ex. E; Applied Digital Compl., Ex. C.

> The Third Addendum as drafted by Character Tech. states in relevant part:
>
> [Character Tech.] made a Phase I prepayment of $22,491,979.78 in July 2023. [Character Tech.] made a Phase II prepayment of $8,073,216.00 in December 2023.
>
> Under this Third Addendum, [Applied Digital] and [Character Tech.] agree that:
>
> 1. The two prepayments described above shall constitute the full payment by [Character Tech.] under this Addendum and Terms of Service.
>
> 2. In consideration of those payments, [Character Tech.] shall have the

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                    Page 8

> right to use the Phase I and Phase II GPUs described on page 1 of this addendum through September 4, 2024.
>
> 3. At midnight on September 4, 2024: (a) [Character Tech.'s] right to use the Phase I and Phase II GPUs shall cease; and (b) this Addendum and the Terms of Service shall be terminated (except to the extent the parties agreed that particular terms survive termination).
>
> 4. Both parties will be whole, and neither party shall have the right to recover payments or other monies from the other (except to the extent damages later become apparent under provisions of the Terms of Service, if any, that survive termination).

Character Tech. Compl., Ex. E at 1–2; Applied Digital Compl., Ex. C at 2.

Applied Digital avers that it neither accepted nor executed the Third Addendum because Applied Digital did not agree with the terms, arguing that the Parties failed to accurately memorialize the offer.  Applied Digital Compl. at ¶ 30.  Character Tech. alleges that Applied Digital gave no indication at the time that the Third Addendum mischaracterized the terms of the Agreement or that the Third Addendum was wrong.  Character Tech. Compl. at ¶ 26.

On September 3, 2024, Character Tech. relinquished exclusive control of the GPUs.  Character Tech. Compl. at ¶ 29; Applied Digital Compl. at ¶ 31.  Applied Digital alleges that Character Tech. continued to have access to and utilized the GPUs whenever it wished to do so.  Applied Digital Compl. at ¶ 31.  Character Tech. contends that Applied Digital deleted Character Tech.'s data from the system, rendering those clusters "essentially useless" to Character Tech.  Character Tech. Compl. at ¶ 29.  On November 15, 2024, Applied Digital issued an invoice

to Character Tech. representing the amount due for the remainder of the Agreement.  Character Tech.  Compl. at ¶ 31; Applied Digital Compl. at ¶ 34. Character Tech. replied that it had completed its service with Applied Digital on September 3, 2024, and stated that there would be no further payments made. Character Tech. Compl. at ¶ 32; Applied Digital Compl. at ¶ 35.  Applied Digital alleges that Character Tech. failed to pay the remaining balance of $31,957,929.40 and Applied Digital sent a demand for payment to Character Tech.  Applied Digital Compl. at ¶¶ 43–44.

Applied Digital contends that after Character Tech. failed to make the payments required under the Agreement and Second Addendum, Applied Digital declared that Character Tech. had breached the Agreement and thus, Applied Digital was relieved of its own performance obligations and entitled to pursue damages.  Applied Digital Compl. at ¶ 45.  Character Tech. avers that Applied Digital's failure to raise the condition precedent of finding new customers to assume Character Tech.'s clusters under the Agreement induced Character Tech. to relinquish its exclusive control of the leased clusters and to cease payments that were otherwise owed under the Agreement.  Character Tech. Compl. at ¶ 37. Character Tech. avers that Applied Digital deprived Character Tech. of its bargained-for benefit under the Agreement.  Id.

On June 5, 2025, Applied Digital provided Character Tech. with a draft

complaint that Applied Digital intended to file within 10 days if Character Tech. refused to remit payment.  Id. at ¶ 36.  Character Tech. contends that Applied Digital's threat to sue left Character Tech. "with no choice but to bring [its] action to vindicate its rights under the Agreement."  Id. at ¶ 40.  On June 13, 2025, Character Tech. filed its Complaint, and on July 18, 2025, Applied Digital filed its Complaint.  See Character Tech. Compl.; Applied Digital Compl.

## LEGAL STANDARD

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201(a) and 1332(a), which grants the Court subject matter jurisdiction over actions in which there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v Twombly ("Twombly"), 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678; see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis.").

The Declaratory Judgment Act states that ". . . any court in the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  When only declaratory relief is sought, federal courts are granted more flexibility in exercising their discretion to hear the case. See Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494–95 (1942); Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).  When determining whether to exercise jurisdiction under the Declaratory Judgment Act, the Court is guided by the

following factors in addition to the Brillhart factors:[1]

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability of the relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Reifer v. Westport Ins. Corp., 751 F.3d 129, 146 (3d Cir. 2014).

In a case involving both declaratory relief and legal claims, the Court applies the independent claim test to determine the level of discretion it may exercise in declining jurisdiction. Rarick v. Federated Serv. Ins. Co., 852 F.3d 223, 229 (3d Cir. 2017). Under the independent claim test, "a district court must determine whether the legal claims are independent of the declaratory claims." Id. "Non-declaratory claims are 'independent' of a declaratory claim when they are alone

---

[1] Courts should consider "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." Brillhart, 316 U.S. at 495. Answering this question may require inquiring: (1) "into the scope of the pending state court proceeding[;]" (2) "the nature of the defenses open there[;]" (3) "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding[;]" (4) whether necessary parties have joined[;]" and (5) "whether such parties are amenable to process in that proceeding[.]" Reifer v. Westport Ins. Corp., 751 F.3d 129, 146 n.21 (3d Cir. 2014) (quoting Brillhart, 316 U.S. at 495).

Court Nos. 1:25-cv-00739, 1:25-cv-00909                          Page 13

sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." Id. at 228 (quoting R.R. St. & Co. v. Vulcan Materials Co., 569 F.3d 711, 715 (7th Cir. 2009)).

If the legal claims are not independent of the claims for declaratory relief, "the court retains discretion to decline jurisdiction of the entire action[.]" Id. at 229. If the legal claims are independent of the claims for declaratory relief, "the court has a 'virtually unflagging obligation' to hear those claims, subject to . . . exceptional circumstances." Id. (citing Colorado River Water Conservation Dist. v. U.S. ("Colorado River"), 424 U.S. 800, 817–19 (1976)). District courts consider the following in determining whether "exceptional circumstances" apply:

> (1) which court first assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 171, 173 (3d Cir. 1999); see Colorado River, 424 U.S. at 818. "Only the clearest of justifications will warrant dismissal." Colorado River, 424 U.S. at 819.

## DISCUSSION

### I.       Motions to Consolidate

The Court may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). "The purpose of consolidation is to streamline

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                    Page 14

and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues." In re TMI Litigation, 193 F.3d 613, 724 (3d Cir. 1999) (quotation and citation omitted).

In its Complaint, Character Tech. seeks a declaratory judgment that Applied Digital's failure to provide "dedicated GPU hardware resources" to Character Tech. after September 4, 2024, constituted a breach of contract, "which served to excuse [Character Tech.] from its contractual obligations to make ongoing payments for access to those clusters."  Character Tech. Compl. at ¶ 57.  Character Tech. also alleges three additional claims: (1) Breach of the Implied Duty of Good Faith and Fair Dealing (Count II); (2) Promissory Estoppel (Count III); and (3) Fraud (Count IV).  Id. at ¶¶ 58–87.

In its motion to dismiss or, in the alternative, motion to consolidate, Character Tech. avers that there is "no basis for the Court to decline to hear [Character Tech.'s] case because the [Character Tech.] Action includes claims for breach of the implied duty of good faith and fair dealing and fraud that are independent of [Character Tech.'s] declaratory judgment claims."  Character Tech. Opening Br. at 9.  Applied Digital contends that Character Tech.'s argument regarding independent claims is "belied by the fact that its ancillary claims rest solely on whether the contract was breached and stem from the very same set of

facts as the declaratory judgment claim," and Applied Digital argues that the Court "retains discretion under the Declaratory Judgment Act to consider [Character Tech.'s] procedural fencing" because the "crux of the matter is declaratory[.]" Pl.'s Answering Br. Opp'n. Def.'s Mot. Dismiss Alt. Consol. ("Applied Digital Resp. Br.") at 10 (D.I. 17).

The Court agrees with Applied Digital that the claims brought by Character Tech. arise out of the same set of facts that underlie the breach of contract claims. Applied Digital argues that Character Tech. engaged in "procedural fencing" by filing Character Tech.'s Complaint consisting of the declaratory claim and legal claims. Applied Digital Resp. Br. at 5, 11. Applied Digital contends that it is "improper for a litigant to so misuse the declaratory judgment device to achieve a first-filing procedural advantage." Id. at 6. Applied Digital asserts that the "first-to-file rule 'is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, [anticipatory filing] or forum shopping.'" Id. at 7 (quoting FMC Corp. v. AMVAC Chem. Corp., 379 F. Supp. 2d 733, 738 (Ed. Pa. 2005) (alteration in original)).

Applied Digital alleges Breach of Contract (Count I), Anticipatory Repudiation (Count II), and Breach of the Covenant of Good Faith and Fair Dealing (Count III). Applied Digital Compl. at ¶¶ 46–62. Character Tech. argues that the Court should dismiss Applied Digital's Complaint under Federal Rules of

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                    Page 16

Civil Procedure 12(b)(6) and 13(a) or, in the alternative, consolidate Applied

Digital Corp., Court No. 25-00909 into Character Tech., Court No. 25-00739.  See

Character Tech. Opening Br. at 4–12.  Applied Digital contends that dismissal

under Rule 13 is inappropriate and avers that Applied Digital should be designated

as plaintiff if the Court consolidates the two cases.  Applied Digital Resp. Br. at

11–12.

The Court notes that Applied Digital's Complaint arises out of the same

transaction or occurrence that is the subject matter of Character Tech.'s Complaint.

Character Tech.'s fraud claim (Count IV) includes allegations that Applied Digital

fraudulently concealed, or withheld, information regarding Character Tech.'s

obligations under the Agreement.  Character Tech. Compl. at ¶ 75 ("During the

parties' negotiation of the Agreement, [Applied Digital] withheld its belief that the

Agreement was subject to a condition precedent requiring that [Applied Digital]

locate a replacement customer to take over [Character Tech.'s] leased computing

clusters before [Character Tech.] would be released from its obligations under the

[Agreement].").  Similarly, Applied Digital's Complaint alleges that Applied

Digital did in fact inform Character Tech. that the Agreement was contingent on a

condition precedent.  Applied Digital Compl. at ¶ 23 ("Mr. Cummins suggested

that if [Applied Digital] were able to find and contract with new, replacement

customers willing to take the GPUs, thereby making [Applied Digital] whole on

the revenue attributable to those GPUs under the Agreement, [Applied Digital] would release [Character Tech.] from payment obligations for those re-leased GPUs otherwise due under the Agreement.").

Both Character Tech.'s Complaint and Applied Digital's Complaint involve the Parties' rights and obligations under the Agreement and whether those rights and obligations were modified under the Agreement.  See Character Tech. Compl. at ¶¶ 45, 53; Applied Digital Compl. at ¶¶ 49–50, 54, 60.  The Court observes that Applied Digital's suit did not name any parties who were not already named in Character Tech.'s action, therefore affirming that Applied Digital's claims do not require the addition of any party beyond the Court's jurisdiction.

The Court finds that the two actions arise from the same "transaction or occurrence" and "does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a)(1).  Additionally, there are no applicable exceptions under Rule 13(a)(2) that would preclude any claims being considered as counterclaims.  The two actions "involve a common question of law or fact," and in order to "streamline and economize pretrial proceedings so as to avoid duplication of effort," the Court orders that the two cases shall be consolidated.  Fed. R. Civ. P. 42(a)(2); In re TMI Litigation, 193 F.3d at 724 (internal quotation omitted).  Both Character Tech. and Applied Digital requested consolidation of the two actions with the only opposition being which Party would

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                    Page 18

retain their status as plaintiff.  See Character Tech. Opening Br. at 11; Applied

Digital Resp. Br. at 11.

Accordingly, the Court holds that Character Tech., Court No. 25-00739 shall

be consolidated into Applied Digital Corp., Court No. 25-00909, with Applied

Digital maintaining its status as Plaintiff, and Character Tech. shall be designated

as Defendant.  Character Tech.'s claims are to be considered as counterclaims in

the consolidated action.  Because Character Tech.'s Count I for Declaratory

Judgment of No Breach of Contract is substantively duplicative, arises out of the

same transaction and occurrence, and involves a common question of law and fact

with Applied Digital's Count I for Breach of Contract, the Court dismisses Count I

of Character Tech.'s Complaint for No Breach of Contract.

## II.        Applied Digital's Partial Motion to Dismiss

Applied Digital moves to partially dismiss Character Tech.'s Complaint as

to Count III for Promissory Estoppel and Count IV for Fraud.  Applied Digital

Opening Br. at 7–13.  Applied Digital argues that Character Tech.'s Promissory

Estoppel claim should be dismissed because Character Tech.'s Complaint does not

allege the required elements of promissory estoppel as detrimental reliance was not

alleged and cannot be established as a matter of law.  Id. at 11–13.  With respect to

Count IV of Character Tech.'s Complaint, Applied Digital contends that under

Delaware's "anti-bootstrapping rule," Character Tech. is not permitted to append a

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                        Page 19

fraud claim to a factually indistinct contract claim.  Id. at 7–8.  Applied Digital

avers that Count IV of Character Tech.'s Complaint does not set forth

particularized or plausible allegations concerning fraudulent inducement.  Id. at 8–

11.

### A.      Promissory Estoppel (Count III)

In Count III of Character Tech.'s Complaint, Character Tech. alleges that the

doctrine of promissory estoppel bars Applied Digital's claim that Character Tech.

breached the Parties' Agreement by failing to make ongoing payments after

Character Tech. relinquished its exclusive access to its leased computing clusters.

Character Tech. Compl. at ¶ 66.

"Promissory estoppel is applied to enforce a promise not supported by

consideration, where there is no binding contract."  MDNet, Inc. v. Pharmacia

Corp., 147 F. App'x. 239, 244 (3d Cir. 2005).  To state a claim for promissory

estoppel, Character Tech. must allege facts sufficient to show that:

> (i) a promise was made; (ii) it was the reasonable expectation of the
> promisor to induce action or forbearance on the part of the promise; (iii)
> the promisee reasonably relied on the promise and took action to his
> detriment; and (iv) such promise is binding because injustice can be
> avoided only by enforcement of the promise.

Harmon v. State, Delaware Harness Racing Comm'n, 62 A.3d 1198, 1200–01

(Del. 2013) (citation omitted).  "The requirement of a written contract does not

necessarily prevent an oral waiver or modification," so long as the plaintiff alleges

"facts showing an intention to waive or modify the requirement of a writing."

MDNet, Inc., 147 F. App'x. at 244.  In Delaware, "contract provisions deeming

oral modifications unenforceable can be waived orally" and may be demonstrated

by course of conduct if there is a "clear intention to alter the express terms."

Simon Prop. Grp., L.P. v. Brighton Collectibles, LLC, C.A. No. N21-C-01-258

MMJ CCLD, 2021 WL 6058522, at *3 (Del. Super. Ct. Dec. 21, 2021) (internal

quotation omitted).  "An oral modification 'must be of such specificity and

directness as to leave no doubt of the intention of the parties to change what they

previously solemnized by formal document.'"  Id. (quoting Durig v. Woodbridge

Bd. of Educ., No. 90C-NO-22, 1992 WL 423926, at *1 (Del. Super. Ct. Dec. 8,

1992)).

Section 10 of the Agreement provides that "[a]ny amendments to this

Agreement must be made in writing and signed by authorized representatives of

both Parties."  Character Tech. Compl., Ex. A at 3.  Accordingly, Character Tech.

must allege facts sufficient to show an intention by Applied Digital to waive or

modify the requirement that any amendment be made in writing and signed as set

forth in Section 10 of the Agreement.  MDNet, Inc., 147 F. App'x. at 244.

Character Tech. alleges in its Complaint that both Applied Digital's CEO, Mr.

Cummins, and Applied Digital's Executive Vice President of Strategic Finance,

Mr. Raza, confirmed in writing Applied Digital's oral promises releasing Character

Tech. from its obligations under the Agreement in exchange for an early return of the leased computing clusters.  See Character Tech. Compl. at ¶¶ 19, 21–23, 28–29.  Character Tech.'s Complaint cites to the attached Exhibits C and D, showing the email and text message exchanges between Character Tech. and Applied Digital regarding Character Tech.'s release from the Agreement.  See id., Exs. C, D.  Character Tech. alleges that the first time it was alerted about Applied Digital's precondition of finding new customers to assume the GPUs assigned to Character Tech. was through a letter sent on March 12, 2025, after the alleged writings and oral promises released Character Tech. from its obligations to pay. Character Tech. Compl. at ¶ 34.

Applied Digital argues that Character Tech. has failed to plead that the Parties intended to waive the no oral modification clause in Section 10 of the Agreement.  Applied Digital Opening Br. at 11–12.  The Court observes that Character Tech. drafted a Third Addendum in an attempt to memorialize the Parties' conversations regarding Character Tech. returning access to the clusters and ending the Agreement early.  Character Tech. Compl. at ¶¶ 24–26.  Character Tech. alleges that the proposed Third Addendum was binding on the Parties based on Applied Digital's representations and actions throughout the negotiation of the Agreement and because Applied Digital never objected to the proposed Third Addendum and did not raise the condition precedent during negotiations.  Id. at

¶¶ 26, 35.

At this stage of the case, assuming all factual allegations contained in Character Tech.'s Complaint to be true, and drawing all reasonable inferences in favor of Character Tech., the Court holds that Character Tech. has alleged facts sufficient to show an intention by Applied Digital to waive or modify the requirement that any amendment be made in writing and signed as contained in Section 10 of the Agreement, at least to a sufficient level to proceed to discovery on this factual issue. See MDNet, Inc., 147 F. App'x. at 244. Further, Character Tech. has alleged facts sufficient to show that Applied Digital promised to release Character Tech. from its obligations under the Agreement in exchange for an early return of the leased computing clusters, and that it was reasonable for Character Tech. to rely on that promise. Character Compl. at ¶¶ 19, 21–23, 28–29. Character Tech. alleged facts showing that Character Tech. reasonably relied on Applied Digital's promise to its detriment, given the loss of exclusive access to the clusters and subsequent deletion of Character Tech.'s data from those clusters. Id. at ¶ 29. Lastly, Character Tech. has sufficiently alleged that Applied Digital's promise was binding because "[r]equiring [Character Tech.] to pay full price for computing power that it has not used, and indeed, given [Applied Digital] deleted Character's data from the leased clusters, could not use, would be unfair, particularly in light of [Applied Digital's] promises[.]" Id. at ¶ 72.

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                           Page 23

Assuming all factual allegations contained in the complaint to be true and drawing all reasonable inferences in favor of Character Tech., the Court holds that Character Tech. has alleged facts sufficient to establish a claim of promissory estoppel. Twombly, 550 U.S. at 555–56. Accordingly, the Court denies Applied Digital's Partial Motion to Dismiss Count III of Character Tech.'s Complaint.

### B.    Fraud (Count IV)

In Count IV of Character Tech.'s Complaint, Character Tech. alleges that Applied Digital "fraudulently concealed, or withheld, material information from [Character Tech.] that, based on the [P]arties' contractual relationship it was under a duty to disclose, to induce [Character Tech.] to relinquish its exclusive access to the leased computing clusters." Character Tech. Compl. at ¶ 74. Applied Digital argues that Character Tech. has not pled "any separate, particularized, and/or plausible fraud allegation," and avers that Delaware courts do not permit a plaintiff to use the words "fraudulently induced" to bootstrap an unsupported fraud claim to a contract claim. Applied Digital Opening Br. at 7–8. Applied Digital contends further that Character Tech. failed to set forth particularized and plausible allegations concerning fraudulent conduct. Id. at 8–11.

When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                      Page 24

"[A] heightened pleading standard applies to fraud claims, requiring that 'in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity.'" Am. Gen. Life. Ins. v. Goldstein, 741 F. Supp. 2d 604, 612 (D. Del. 2010) (quoting Trenwick Am. Litig. Trust v. Ernst & Young, LLP, 906 A.2d 168, 207 (Del. Ch. 2006) (alterations in original), aff'd sub nom., Trenwick Am. Litig. Trust v. Billett, 931 A.2d 438 (Del. 2007)).  Under Delaware law, the elements of fraud are:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

Snowstorm Acquisition Corp. v. Tecumseh Prods. Co., 739 F. Supp. 2d 686, 708 (D. Del. 2010) (quoting Norman v. Elkin, 617 F. Supp. 2d 303, 315 n.6 (D. Del. 2009)).  In Delaware, there are three recognized categories of fraud: "(1) affirmative falsehoods; (2) active concealment; and (3) silence in the face of a duty to speak." Id. (quoting Airborne Health, Inc. v. Squid Soap, LP, Civ. No. 4410, 2010 WL 2836391, at *7 (Del. July 20, 2010)).  "[O]ne is equally culpable of fraud who by omission fails to reveal that which it is his duty to disclose in order to prevent statements actually made from being misleading." Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983) (citations omitted).

Character Tech. alleges that Applied Digital was under a duty to disclose

Applied Digital's belief that the Agreement was subject to a condition precedent requiring Applied Digital to locate a replacement customer to take over Character Tech.'s leased computing clusters before Character Tech. would be released from its obligations.  Character Tech. Compl. at ¶¶ 74–76.  Applied Digital argues that it was under no obligation to disclose information to Character Tech. and contends that Character Tech.'s Complaint fails to allege the factual basis from which the purported duty derives, what it entails, and how and why Applied Digital would be under an affirmative duty.  Applied Digital Opening Br. at 10.

Character Tech.'s Complaint alleges that Applied Digital had multiple opportunities to disclose its belief that the Agreement was subject to a condition precedent.  Character Tech. Compl. at ¶ 76.  Character Tech. contends that Applied Digital did not disclose the condition precedent when Applied Digital first offered to end the Agreement early, nor did Applied Digital disclose the condition precedent in subsequent communications between the Parties.  Id. at ¶¶ 77–79. The Complaint alleges that after Character Tech. sent the proposed Third Addendum, Applied Digital had a duty to disclose its belief that the Third Addendum did not accurately reflect the terms of the Agreement.  Id. at ¶ 80.

The Court observes that Applied Digital received the proposed Third Addendum after the Parties communicated the terms that Character Tech. attempted to memorialize in the Third Addendum.  See id., Ex. D.  Applied Digital

did not respond that the proposed Third Addendum failed to accurately reflect the terms discussed by the Parties.  See id.  After Applied Digital was in receipt of the proposed Third Addendum, Applied Digital had the opportunity to disclose the condition precedent, yet failed to do so.  Accordingly, at this stage of the case, assuming all factual allegations contained in the complaint to be true and drawing all reasonable inferences in favor of Character Tech., the Court holds that Character Tech. has alleged facts sufficient to show that Applied Digital had a duty to disclose the condition precedent of finding replacement customers before releasing Character Tech. from its obligations.  See Stephenson, 462 A.2d at 1074.

With respect to the third element of fraud, Applied Digital's intent to induce Character Tech. to act or refrain from acting, Character Tech. alleges that Applied Digital intended to induce Character Tech. to relinquish its exclusive access to the leased computing clusters.  Character Tech. Compl. at ¶ 74.  As to the fourth and fifth elements of justifiable reliance and damage because of said reliance, Character Tech. relinquished its exclusive access to the leased computing clusters to Applied Digital under the belief that Applied Digital would release Character Tech. from its obligations under the Agreement.  Id. at ¶ 87; see Stephenson, 462 A.2d at 1074.  Character Tech. alleges that Applied Digital deleted all of Character Tech.'s data from the clusters and that Character Tech. proceeded to seek additional computing power from third-party providers.  Character Tech. Compl. at

¶ 87.

Applied Digital argues that Character Tech. failed to allege damages related to the fraud allegation. Applied Digital Opening Br. at 10–11. Under Delaware law, however, Character Tech. has sufficiently alleged facts showing that it was damaged as a result of its reliance on Applied Digital's statements. See Latsco, L.P. v. Wayport, Inc., No. 4167-VCL, 2009 WL 2246793, at *9 (Del. Ch. July 24, 2009) ("Lastly, with regard to damages, although how damages would be measured should the plaintiffs prevail is unclear, all that the plaintiffs need to plead at this stage is that they were harmed by the fraudulent conduct."). Accordingly, assuming all factual allegations contained in the complaint to be true and drawing all reasonable inferences in favor of Character Tech., the Court holds that Character Tech. has sufficiently pled facts establishing its fraud claim against Applied Digital.

Delaware's "anti-bootstrapping rule" bars a fraud claim when the plaintiff merely "adds the term 'fraudulently induced' to a complaint or alleges that the defendant never intended to comply with the agreement at issue at the time the parties entered into it," but does not prevent "a fraud claim against defendants who 'knew [contractual representations] were false, and yet made them anyway.'" Levy Fam. Invs., LLC v. Oars + Alps LLC, No. CV 2021-0129-JRS, 2022 WL 245543, at *8 (Del. Ch. Jan. 27, 2022) (alteration in original) (quoting Anschutz

Court Nos. 1:25-cv-00739, 1:25-cv-00909                                    Page 28

Corp. v. Brown Robin Cap., LLC, No. CV 2019-0710-JRS, 2020 WL 3096744, at *15 (Del. Ch. June 11, 2020)).  "A rule that would limit a plaintiff's recovery for so-called 'contractual fraud' solely on the ground that the same conduct also constitutes a breach of contract would offend Delaware public policy and the now-settled Delaware law regarding 'contractual fraud' that is animated, in part, by those policy concerns."  Id.  Delaware's "anti-bootstrapping rule" does not prevent parties from bringing a fraud claim if: "(1) the plaintiff alleges the seller knowingly made false contractual representations[;]" "(2) damages for plaintiff's fraud claim may be different from plaintiff's own breach of contract claim[;]" "(3) the conduct occurs prior to the execution of the contract and thus with the goal of inducing the plaintiff's signature and willingness to close on the transaction[;]" or "(4) the breach of contract claim is not well-pled such that there is no breach claim on which to 'bootstrap' the fraud claim."  Levy Fam. Invs., LLC, 2022 WL 245543, at *8 (internal citations omitted).

Character Tech. alleges that Applied Digital withheld its belief that the Agreement was subject to a condition precedent requiring that Applied Digital locate a replacement customer to take over Character Tech.'s leased computing clusters before Character Tech. would be released from its obligations to pay. Character Tech. Compl. at ¶ 75.  Character Tech. avers that Applied Digital had several opportunities to disclose its belief that the Agreement was subject to this

condition.  Id. at ¶ 76.  Character Tech.'s Complaint refers to email and text message communications alleging that Applied Digital should have disclosed its belief regarding the condition precedent in this correspondence.  Id. at ¶¶ 77–79.  Lastly, Character Tech. contends that Applied Digital should have disclosed the condition precedent when Applied Digital received the proposed Third Addendum from Character Tech.  Id. at ¶ 80.  Although Character Tech.'s fraud claim and declaratory judgment claim overlap in some degree, the fraud claim is distinct from the declaratory judgment claim, because Character Tech. sufficiently pled that Applied Digital engaged in fraudulent inducement by withholding its belief that the Agreement was subject to a condition precedent that required Applied Digital to locate a replacement customer to take over Character Tech.'s leased computing clusters before Character Tech. would be released from its obligations.  See Levy Fam. Invs., LLC, 2022 WL 245543, at *8.  Because Character Tech. has sufficiently pled that Applied Digital made pre-agreement misrepresentations and omissions intended to induce Character Tech. to relinquish its exclusive control of the leased computing clusters, Character Tech.'s fraud claim will not be dismissed on the ground that the fraud claim is duplicative and will survive as a counterclaim after consolidation.  Accordingly, the Court denies Applied Digital's Partial Motion to Dismiss Count IV of Character Tech.'s Complaint.

Court Nos. 1:25-cv-00739, 1:25-cv-00909                              Page 30

## CONCLUSION

Upon consideration of Applied Digital's Partial Motion to Dismiss in

Character Tech., Court No. 25-00739 (D.I. 9) and Character Tech.'s Motion to

Dismiss or Consolidate in Applied Digital, Court No. 25-00909 (D.I. 11), and all

other papers and proceedings in this action, it is hereby

**ORDERED** that Applied Digital's Partial Motion to Dismiss in Character

Tech., Court No. 25-00739 (D.I. 9) is granted in part and denied in part; and it is

further

**ORDERED** that Count I of Character Tech.'s Complaint, Declaratory

Judgment of No Breach of Contract, is dismissed; and it is further

**ORDERED** that Character Tech.'s Motion to Dismiss or Consolidate in

Applied Digital, Court No. 25-00909 (D.I. 11) is granted in part and denied in part;

and it is further

**ORDERED** that Court No. 25-00739 shall be consolidated into Court No.

25-00909; and it is further

**ORDERED** that this case shall proceed under Consol. Court No. 25-00909.

IT IS SO ORDERED this 23rd day of July, 2026.

       /s/ Jennifer Choe-Groves
       Jennifer Choe-Groves
       U.S. District Court Judge*

---

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.